# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| GEORGE G. FLOWERS<br><br>                       Plaintiff,<br><br>  vs.<br><br>CONNECT AMERICA.COM, LLC<br><br>                       Defendant. | CIVIL ACTION<br><br>NO.<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff George Flowers, by his attorney, Henry Ian Pass, as and for his Complaint, alleges as follows:

### NATURE OF THE ACTION

1. This Complaint arises out of Defendant's liability to Plaintiff for contractual finder's commissions based upon principles of Pennsylvania common law for breach of contract and recovery in quantum meruit, promissory estoppel and unjust enrichment.

### PARTIES

2. Plaintiff George G. Flowers ("Plaintiff" or "Flowers") is an adult individual and citizen of the State of New Jersey, residing at 517 Fordham Road, Woodbury Hts., NJ 08097

3. Defendant Connect America.com, LLC ("Defendant" or "Connect America") is a Delaware limited liability company registered as a foreign limited liability company in the Commonwealth of Pennsylvania with its registered office, and principal place of business, located at 2193 West Chester Pike, Broomall, PA 19008.

4. Defendant Connect America's registered office and agent in the State of Delaware is Delaware Registered Agents and Incorporators, LLC, 18 Kris Court, Newark, DE 19702.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) because the parties are citizens of different states and the amount in controversy exceeds $75,000.

6. Venue is proper in the district because the significant events giving rise to Plaintiff's causes of action took place within this district.

## BACKGROUND

7. During 2008, Defendant Connect America was in the business of selling medical alarm devices and monitoring services (collectively, "Devices") and was seeking to expand its market.

8. Plaintiff Flowers had developed significant connections in the marketplace in which Defendant wished to market its Devices and, as a result, in October of 2008, offered to provide services ("Services") as a "finder" to Defendant, in return for commissions, by making introductions that could lead to the establishment of business relationships with third parties for Connect America.

9. On November 11, 2008, Flowers and Connect America entered into a written Finders Fee Agreement ("Agreement") pursuant to which Connect America would pay Flowers commissions for introductions and/or referrals made by him to prospective customers that purchased Devices from Connect America.

10. Pursuant to the Agreement, Connect America agreed to pay Flowers commissions ("Commissions") equal to the greater of (i) $10.00 per unit sold, or (ii) the portion of monthly recurring revenue related to each such unit in excess of $15.00 per month that is not otherwise paid to the referred customer ("Commission Calculation Method"). Such commissions were to be paid for the duration of the relationship between Connect America (and, by operation of law, any successor in interest to Connect America by virtue of a sale of Connect America's business) and the referred client.

11. The Agreement was memorialized in written correspondence to Flowers dated November 11, 2008, which was electronically signed by Connect America's then President Ken Gross ("Gross"), a copy of which is attached hereto and incorporated herein as Exhibit A.

12. Prior to November 11, 2008, Flowers had been providing services to Connect America pursuant to a verbal agreement entered into on or around October 2008 under the same terms memorialized by the Agreement.

13. By e-mail dated March 23, 2009, Connect America requested to amend the Agreement so that Commissions to Flowers for Services performed after that date would be at $10.00 per unit sold ("Amended Commission Calculation Method"). By return e-mail of the same date, Flowers agreed that the $10.00 per unit sold modification would apply to any future Referral Customers brought in by him but did not agree that it would apply to the Referral Customers previously introduced by Flowers.

14. The amendment to the Agreement ("Amendment") was memorialized in written correspondence to Flowers dated March 23, 2009, which was electronically signed by Gross, a copy of which is attached hereto and incorporated herein as Exhibit B.

15. Flowers continued in good faith to perform Services under the Agreement and Amendment as evidenced, *inter alia*, by the written correspondence attached hereto and incorporated herein as Exhibit C.

16. Connect America never expressed any complaints with the Services being provided by Plaintiff and, in fact, by e-mail dated March 5, 2009 (see Exhibit D), Gross expressed Connect America's pleasure with a Referral Customer introduced by Plaintiff by stating, "George….If you brought in 5 more like this one….you would never have to work again!" Additional correspondence expressing Connect America's satisfaction with Flowers' Services are also included in Exhibit D.

17. Flowers' Services were the efficient procuring cause of Connect America's relationships with (i) First Street ("First Street"), (ii) Electric Mobility ("Electric Mobility"), (iii) Dr. Leonard's Healthcare ("Dr. Leonard's"), and (iv) Internet Alliance ("Internet Alliance") (each a "Referral Customer" and collectively, the "Referral Customers"), one or more of which, upon information and belief, are ongoing.

18. As a direct result of the Services provided to Connect America by Flowers, each of the Referral Customers entered into a business relationship with Connect America and the amount of business generated by the Referral Customers for the benefit of Connect America has been substantial.

19. The relationships with the Referral Customers significantly enhanced the value of Connect America's business and the purchase price it was able to achieve at the time of its sale in January of 2011 to Rockbridge Growth Equity ("Rockbridge"), which purchase was announced in a press release, a copy of which is attached hereto and incorporated herein as Exhibit E.

20. Connect America expressly recognized that under the Agreement and Amendment it had an obligation to pay Flowers in accordance with either the Commission Calculation Method or the Amended Commission Calculation Method referenced above for all sales generated from its business relationship with the Referral Customers.

21. Acting pursuant to the Agreement, Connect America paid Commissions to Flowers in connection with Connect America's sales of Devices to First Street. For example, between March 10, 2009 and January 15, 2010, Connect America remitted checks to Flowers totaling $49,290.00, with each Commission payment allegedly calculated in accordance with the Agreement. Copies of checks sent to Flowers by Connect America are attached hereto and incorporated herein collectively as Exhibit F.

22. However, for reasons which lack legal support, no amounts were paid by Connect America to Flowers for any Devices sold by Connect America to any other Referral Customers.

23. In addition, despite Flowers' repeated requests for same, Connect America failed and refused to provide Flowers with evidence of its contractual arrangements with First Street or any of the other Referral Customers to enable him to verify if the amounts paid to him with respect to First Street (and the failure to pay him anything with respect to the other Referral Customers) were correct (see correspondence attached hereto and incorporated herein by reference as Exhibit G).

24. During the discussions that led directly to its business relationship with Connect America, First Street raised the question of how and to what extent Flowers should be compensated for his services

in introducing Connect America to First Street. In justifiable reliance on Connect America's representation to him that he would receive compensation from it, and his Agreement with Connect America, Flowers did not pursue further compensation for himself from First Street.

25. In or about late 2008, Flowers provided Services to Connect America that resulted in a business relationship between Connect America and Electric Mobility (see correspondence attached hereto and incorporated herein by reference collectively as Exhibit C, including but not limited Plaintiff's letter of 2/5/09).

26. Prior to and subsequent to March 23, 2009, Flowers provided Services to Connect America that resulted in a business relationship between Connect America and Dr. Leonard's Medical Alarm (see correspondence attached hereto and incorporated herein by reference collectively as Exhibit C, including but not limited to Plaintiff's emails of 3/18/09 and 3/27/09).

27. Subsequent to March 23, 2009, Flowers provided Services to Connect America that resulted in a business relationship between Connect America and Internet Alliance (see correspondence attached hereto and incorporated herein by reference collectively as Exhibit C, including but not limited to emails between Plaintiff, Connect America and Internet Alliance beginning on 3/27/09).

28. Without justification or other lawful basis, Connect America has never paid Flowers anything with respect to its business relationship with the Referral Customers referenced in paragraphs 25-27 above, despite collecting unaccounted for revenue from them as a result of Flowers' Services.

29. In a letter to Flowers dated November 10, 2009, Connect America notified Flowers that it was unilaterally terminating the Agreement but would continue to pay him for sales generated by First Street through December 31, 2009 and would not make any further payments to Flowers thereafter (see Exhibit H attached hereto and incorporated herein by reference).

30. Upon information and belief, Connect America's attempt to terminate the Agreement was an effort to avoid having to disclose to potential acquirers its contractual relationship with, and substantial

ongoing financial obligations to, Flowers (as discussed in paragraph 19 above, Connect America was subsequently acquired by Rockbridge in January of 2011).

31. Such unilateral termination constituted a material breach and repudiation of Connect America's contractual obligations to Flowers, and Flowers so advised Connect America of same through letters from him dated January 13, 2010, February 20, 2010, March 25, 2010 and March 23, 2011, and from his then counsel dated April 1, 2011 (copies of which are attached hereto and incorporated herein by reference collectively as Exhibit I).

32. Connect America's material breach and repudiation specifically contravened the Agreement, the intent of which was for Flowers to receive commission payments for as long as Connect America sold Devices to the respective Referral Customers.

33. Despite repeated requests from Flowers, Connect America has only provided partial accounting to Flowers of Devices sold by Connect America to Referral Customers and the amount of revenue received by Connect America regarding such sales.

34. Plaintiff cannot determine the amount of Finders Fees to which he is entitled without a full accounting of Connect America's Device sales to Referral Customers and the amount of revenue received and/or to be received therefrom.

35. At all times relevant, the Referral Customers marketed the Devices acquired from Connect America through a variety of media sources including, without limitation, internet advertising, direct mail, Parade Magazine and publications of the American Association of Retired People ("AARP"). A sampling of such advertisements is attached hereto and incorporated herein collectively as Exhibit J.

36. Significantly, regarding Devices sold by Connect America to First Street, an advertisement for the Device appeared in the AARP Bulletin as recently as the April, 2012 edition, a copy of which is attached hereto and incorporated herein as Exhibit K.

37. On information and belief, Connect America stopped selling Devices to First Street as of June, 2012, when First Street commenced selling another medical alarm device manufactured by, or on

behalf of, Philips Electronics, known as "Philips Lifeline with AutoAlert." The foregoing is evidenced by advertisements published in the June, 2012 edition of AARP Bulletin and in the June 24, 2012 Parade Magazine, copies of which are attached hereto and incorporated herein collectively as Exhibit L.

### COUNT I - BREACH OF CONTRACT

38. Paragraphs 1-37 above are hereby incorporated by reference.

39. The Agreement is a valid and binding contract.

40. Flowers was the efficient procuring cause of Connect America's sale of Devices to the Referral Customers.

41. All of the material terms embodied in the Agreement were agreed to in writing by Connect America through the electronically executed e-mail of Gross in his capacity as Connect America's President.

42. The Agreement is valid and binding pursuant to section 7001, *et seq.* of the Federal Electronic Signatures in Global and National Commerce Act, 15 U.S.C.A. § 7001, *et seq.*, and sections 2260.101, *et seq.*, of the Pennsylvania Electronic Transactions Act, 73 P.S. § 2260.101, *et seq*.

43. Pursuant to the Agreement, Connect America is required to pay Flowers in accordance with the Commission Calculation Method for all revenues received from the sale of Devices to Referral Customers First Street and Electric Mobility, both of which referrals were effectuated prior to the date of the Amendment as evidenced by the correspondence attached hereto and incorporated herein as Exhibit C.

44. Pursuant to the Amendment, Connect America is required to pay Flowers in accordance with the Amended Commission Calculation Method for all revenues received from the sale of Devices to Referral Customers Dr. Leonard's and Internet Alliance, both of which referrals were effectuated after the date of the Amendment as evidenced by the correspondence attached hereto and incorporated herein as Exhibit C.

45. To the extent that any of Plaintiff's commission rights under and with respect to Referral Clients obtained under the original Agreement are not calculable under the Commission Calculation Method, Plaintiff is entitled, at a minimum, to commissions as calculated under the Amended Commission Calculation Method.

46. Connect America has materially breached and repudiated the Agreement by failing and refusing to pay Flowers in accordance with the terms of the Agreement and the Amendment as referenced above for all revenues received from the sale of Devices to Referral Customers.

47. The Agreement contained an implied covenant of good faith and fair dealing between Connect America and Flowers.

48. Connect America materially and willfully breached its implied covenant of good faith and fair dealing by attempting to unilaterally terminate the Agreement with Flowers without cause or legal justification.

49. Connect America materially and willfully breached its implied covenant of good faith and fair dealing by misrepresenting the amounts to which Flowers is entitled and by failing to account for same.

50. Flowers has sustained damages in excess of $75,000, to be determined at trial, as a result of Connect America's material breach and repudiation of the Agreement.

WHEREFORE, Flowers respectfully requests that the Court enter judgment in his favor and against Connect America in an amount in excess of $75,000 to be determined at trial, together with an award of costs, interest, and such other relief as the Court deems appropriate.

### COUNT II - QUANTUM MERUIT

51. Paragraphs 1-50 above are hereby incorporated by reference.

52. In the alternative, as permitted and contemplated by F.R.C.P. 8(d)(3), and to the extent the acts and omissions of Connect America of which Flowers now complains are deemed to be outside the

express and implied terms of the Agreement, Connect America has been unjustly enriched through its failure to pay Flowers the fair value of his services.

53. Flowers provided valuable Services to Connect America with the expectation that he would be paid for the services in accordance with the Agreement, discussions between the parties, and industry custom. Flowers did not provide these services to Connect America as a gratuity.

54. Connect America has received the full benefit of Flowers' Services without paying Flowers.

55. Connect America has been and will continue to be unjustly enriched and Flowers will be unfairly deprived of the value of his Services if Connect America is not required to pay Flowers the fair value of his Services.

56. The fair value of Flowers' Services is equal to the amounts calculated in accordance with the Commission Calculation Method.

57. An injustice can only be avoided by a Court order requiring Connect America to pay Flowers the fair value of his Services consistent with the Commission Calculation Method.

WHEREFORE, Flowers respectfully requests this Court to enter judgment in his favor and against Connect America in an amount to be determined at trial, together with an award of costs, including reasonable attorneys' fees incurred in connection with this action, interest, and such other relief as the Court deems equitable and just.

**COUNT III - PROMISSORY ESTOPPEL**

58. Paragraphs 1-57 above are hereby incorporated by reference.

59. In the alternative, as permitted and contemplated by F.R.C.P. 8(d)(3), and to the extent the acts and omissions of Connect America of which Flowers now complains are deemed to be outside the express and implied terms of the Agreement, Connect America received substantial revenue from First Street and, on information and belief, from the other Referral Customers as a direct and proximate result of Flowers' Services.

60. Plaintiff's Services were the efficient procuring cause of such revenue and other benefits.

61. Defendant promised Flowers that it would compensate Flowers under the Agreement for the introduction of Connect America to First Street and the other Referral Customers.

62. Flowers justifiably relied on this promise to his detriment.

WHEREFORE, Flowers respectfully requests that the Court enter judgment in his favor and against Connect America in an amount to be determined at trial, together with an award of costs, including reasonable attorneys' fees incurred in connection with this action, interest, and such other relief as the Court deems appropriate.

## COUNT IV - UNJUST ENRICHMENT

63. Paragraphs 1-62 above are hereby incorporated by reference.

64. In the alternative, as permitted and contemplated by F.R.C.P. 8(d)(3), and to the extent the acts and omissions of Connect America of which Flowers now complains are deemed to be outside the express and implied terms of the Agreement, Defendant has been unjustly enriched at Plaintiff's expense as a result of its retention of Plaintiff's funds.

WHEREFORE, Flowers respectfully requests this Court to enter judgment in his favor and against Connect America in an amount to be determined at trial, together with an award of costs, including reasonable attorneys' fees incurred in connection with this action, interest, and such other relief as the Court deems equitable and just.

## COUNT V - DECLARATORY JUDGMENT

65. Paragraphs 1-64 above are hereby incorporated by reference.

66. For the reasons stated above, Flowers is entitled to receive commissions calculated in accordance with the Commission Calculation Method referenced above for all revenues received by Connect America from the Referrals.

67. These Referrals and Connect America's receipt of revenues therefrom are ongoing and are expected to continue.

68. Flowers avers he is entitled to the present value of the expected revenues, as established at trial, in a lump sum. In the alternative, Flowers is entitled to receive commissions calculated in accordance with the Commission Calculation Method referenced above for all revenues received by Connect America as result of these funds as the revenues are received by Connect America.

69. Connect America contends that Flowers is not entitled to any additional revenues received by Connect America as result of the Referrals.

70. In light of the foregoing, there is an actual controversy regarding Connect America's obligations to make payments to Flowers.

WHEREFORE, Flowers respectfully requests this Court to enter a declaratory judgment in his favor and against Connect America as follows:

(a) Entering judgment in an amount to be determined at trial;

(b) Requiring cumulative and quarterly accountings performed by an independent auditor at Connect America's expense to determine the revenues received by and Commissions owed by Connect America as a result of the Referrals;

(c) Preventing Connect America from directly or indirectly manipulating its business so as to avoid payments to Flowers;

(d) Imposing a constructive trust against Connect America for accrued and accruing Commissions owed by Connect America to Flowers;

(e) Requiring Connect America to pay to Flowers commissions calculated in accordance with the Commission Calculation Method referenced above for all revenues received by Connect America as the result of the Referrals, as determined by the accounting, within ten (10) business days after the completion of each accounting under (b) above;

(f) Awarding Flowers interest and costs, including reasonable attorneys' fees incurred in connection with this action; and,

(g) Such other relief as the Court deems equitable and just.

### REQUEST FOR JURY TRIAL

Plaintiff, by and through his attorney, Henry I. Pass, hereby requests a jury trial before twelve (12) jurors on the issues in this case.

LAW OFFICES OF HENRY IAN PASS

By: _____
Henry I. Pass, Esq.
Attorney I.D. #21437
3 Bala Plaza East, Suite 700A
Bala Cynwyd, PA 19004
610-660-8001 (Phone)
610-660-8004 (Fax)
Email: hip@hipesq.com

*Attorney for Plaintiff, George Flowers*

Dated: August 20, 2012

**EXHIBIT LIST**

| Exhibit | Description |
| --- | --- |
| A | Agreement |
| B | Amendment to Agreement |
| C | Emails evidencing Flowers' continued good faith performance of Services under the Agreement and Amendment |
| D | Correspondence from Connect America representatives expressing Connect America's appreciation for Plaintiff's Referrals and Services provided |
| E | Press Release announcing sale of Connect America |
| F | Commission checks sent to Flowers by Connect America |
| G | Correspondence evidencing Flowers' repeated requests for evidence of Connect America's contractual arrangements with First Street or any of the other Referral Customers |
| H | November 10, 2009 termination letter from Connect America to Flowers |
| I | Correspondence from Flowers and his then counsel to Connect America advising of its breach of the Agreement |
| J | Advertising evidencing the marketing of the Devices by First Street |
| K | Advertisements from April, 2012 AARP Bulletin and April 15, 2012 edition of Parade Magazine evidencing First Street's continuing marketing of the Devices |
| L | Philips Lifeline advertisements published in the June, 2012 edition of AARP Bulletin and the June 24, 2012 edition of Parade Magazine |